Alicia G. GARCIA, Plaintiff–Appellant,

v.

CITY OF ABILENE, et al., Defendants–Appellees.

No. 89–1372

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1989.

Gilbert Rodriguez, William Kimble, West Texas Legal Services, Abilene, Tex., for plaintiff-appellant.

Claudia Clinton, Harvey Cargill, Jr., City Attys., Abilene, Tex., for defendants-appellees.

Before WILLIAMS, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:

Mrs. Alicia Garcia filed suit under 42 U.S.C. § 1983 against the City of Abilene and Judge Phillip Wetherbee, an Abilene municipal court judge, alleging that the City of Abilene's fine collection system was unconstitutional and seeking injunctive relief, monetary damages, and attorney's fees. The district court directed a verdict against Mrs. Garcia. We affirm.

I

On October 9, 1986, a city official issued a citation to Mrs. Garcia for failure to restrain her dog. Mrs. Garcia promised to appear in Abilene Municipal Court in regard to the citation within 10 days. When Mrs. Garcia did not appear, the city assessed an additional citation and fine for failure to appear. On November 17, 1986, Mrs. Garcia appeared and pleaded guilty to the failure to restrain her dog citation. Judge Wetherbee dismissed the failure to appear citation because Mrs. Garcia's mother and husband had died in early November. Mrs. Garcia signed a continuance agreement on the payment of her $12 fine until December 5, 1986. The continuance agreement stated that not appearing on December 5 would subject her to arrest and failure to appear charges.

On December 5, 1986, Mrs. Garcia again failed to appear. When she appeared on December 9, 1986, Judge Wetherbee dismissed the second failure to appear citation and allowed Mrs. Garcia to sign a second continuance agreement on the $12 fine until January 9, 1987. She failed to appear on January 9 and received a third failure to appear citation. On January 13, 1987, the municipal court issued a capias pro fine arrest warrant for Mrs. Garcia based upon her failure to either pay the $12.00 fine or appear and assert some excuse. Mrs. Garcia was notified by telephone of the warrant that morning and appeared later that day. When she appeared Judge Wetherbee apparently told her that she could plead guilty and pay the fine, which was $32.00 at that time, or plead not guilty and have a jury trial. Mrs. Garcia chose to plead not guilty to the failure to appear charge, a class C misdemeanor, Tex.Penal Code Ann. § 38.11(e) (Vernon 1989), which is a fine only offense under Texas law, Tex.Penal Code Ann. § 12.23 (Vernon 1974).

The failure to appear charge was tried to a jury on February 5, 1987. The jury found her guilty and assessed a fine and costs totaling $102. The court set an installment plan of $25 per month pursuant to Tex.Crim.Proc.Code Ann. art. 45.06 (Vernon Supp.1989). On March 5, 1987, Mrs. Garcia told the court that she could not pay the first $25.00 installment. She then signed another continuance agreement promising to appear on March 20, 1987, and let the court know when she could pay. She again failed to appear. A fourth citation for failure to appear was issued and, because of her default in the payment of the $102 without appearing in court to explain the default, a warrant for her arrest was issued.

Although the City of Abilene never arrested and incarcerated Mrs. Garcia, she filed suit under 42 U.S.C. § 1983 in district court against the City of Abilene and Judge Wetherbee seeking injunctive relief, monetary damages, and attorney's fees for violation of her constitutional rights. Mrs. Garcia alleged that the City of Abilene unconstitutionally jailed indigent defendants because of their inability to pay fines. She also asserted that she should have been provided counsel at her trial. Originally, Mrs. Garcia filed suit as a class action, but the district court refused to certify the case as a class action because Mrs. Garcia did not comply with Fed.R.Civ.P. 23. A trial was held before the district court on March 20, 1989. During trial Mrs. Garcia withdrew any claim against Judge Wetherbee for damages. After hearing the testimony of Judge Wetherbee and Mrs. Garcia the court directed a verdict in favor of the City of Abilene and entered judgment on that verdict on March 31, 1989. Mrs. Garcia appealed.

## II

Mrs. Garcia contends that the City of Abilene violated her sixth and fourteenth amendment right to counsel by not appointing an attorney to represent her in the municipal court trial of the failure to appear charge. However, because Mrs. Garcia was never actually incarcerated, the right to appointed counsel never attached. See Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

## III

Mrs. Garcia also argues that the City of Abilene's fine collection system as applied to her is unconstitutional under Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). She claims that the City of Abilene, through Judge Wetherbee, discriminated against her based on her economic status by attempting to imprison her for failure to pay her fine and by only extending the time for full payment of her fine instead of reducing the amount owed. Although Mrs. Garcia has never been arrested and placed in jail, the issuance of the arrest warrant, which to our knowledge remains pending, makes this case sufficiently ripe for our resolution. Cf. KVUE, Inc. v. Austin Broadcasting Corp., 709 F.2d 922, 927–31 (5th Cir.1983) (holding that real fear of prosecution under statute was sufficient to give plaintiff "standing" to challenge it).

In Tate the Supreme Court held that imprisoning an indigent solely because he is unable to pay his fines contravenes the equal protection clause by discriminating based upon economic status. Id. 401 U.S. at 399, 91 S.Ct. at 671. However, the Court emphasized that other alternatives are available to the states to enforce payment of fines:

The State is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction.

It is unnecessary for us to canvass the numerous alternatives to which the State by legislative enactment—or judges within the scope of their authority—may resort in order to avoid imprisoning an indigent beyond the statutory maximum

for involuntary nonpayment of a fine or court costs. Appellant has suggested several plans, some of which are already utilized in some States, while others resemble those proposed by various studies. The State is free to choose from among the variety of solutions already proposed and, of course, it may devise new ones.

*Id.* at 399–400, 91 S.Ct. at 671–72 (quoting *Williams v. Illinois,* 399 U.S. 235, 244–45, 90 S.Ct. 2018, 2023–24, 26 L.Ed.2d 586 (1970)) (footnote omitted). The Court suggested payment of fines in installments as one alternative. *Id.* at 400 n. 5, 91 S.Ct. at 671 n. 5. Finally, the Court noted that it was leaving for decision another day the propriety of imprisonment when "alternative means are unsuccessful despite the defendant's reasonable efforts to satisfy the fines." *Id.* at 401, 91 S.Ct. at 672.

However, in *Burton v. Goodlett,* 480 F.2d 983 (5th Cir.1973), we opined that the question left open *Tate,* whether the state could jail indigents who failed to pay despite reasonable efforts, was implicitly answered in *Tate.* We stated:

Surely, such a caveat was an inescapable ingredient of the opinion. If indigents may avoid the payment of fines while those with funds or property are required to pay the penalty, we are a country in which some people are ruled by law while others are practically immune, at least as to offenses ordinarily punished by the exaction of a fine.

*Id.* at 985. We also found that *Tate* allowed the jailing of those whose failure to pay is "willful or otherwise unjustified." *Id.*

In *Bearden* the Supreme Court revisited the *Tate* problem in the context of probation revocation. The Court, relying heavily on *Tate,* held that

in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defen-

dant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

461 U.S. at 672–73, 103 S.Ct. at 2072–73. The Court suggested that the states' interest in punishment and deterrence could generally be satisfied by alternative punishments such as extending the time for payments, reducing the fine, or substituting some form of labor or public service in place of the fine. *Id.* at 672, 103 S.Ct. at 20.

■ Mrs. Garcia contends that the City of Abilene violated the principles established in *Tate* and *Bearden* by attempting to jail her solely because she could not pay her fines. However, these cases rest on the assumption that the indigent appears before the court to assert his inability to pay. Even assuming an individual who is fined is too poor to pay, if he does not appear and assert his indigency, the court cannot inquire into his reasons for not paying and offer alternatives.

■ Mrs. Garcia's second argument is that *Tate* and *Bearden* required Judge Wetherbee to reduce the amount of the fine instead of extending the time for full payment. This is incorrect. These cases require only that courts use alternatives to imprisonment, one of which is extending the time to pay; they do not require courts to reduce the fine. In this case Judge Wetherbee employed three different alternatives: he dismissed two fines, extended the time for Mrs. Garcia to pay and offered her an installment plan.

## IV

In sum, we find that the fine collection system of the City of Abilene as applied to Mrs. Garcia does not contravene constitutional standards, and, accordingly, the judgment of the district court is

AFFIRMED.