**John DOE, Plaintiff,**

v.

**ANGELINA COUNTY, TEXAS and Mike Lawrence, Sheriff, sued in his individual and official capacity, Defendants.**

**Civ. A. No. L–88–58–CA.**

United States District Court,
E.D. Texas,
Lufkin Division.

March 19, 1990.

Timothy B. Garrigan, Nacogdoches, Tex., for plaintiff.

Alan N. Magenheim, Houston, Tex., for defendants.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

The plaintiff's motion for partial summary judgment on his claims that his incarceration in the Angelina County Jail from November 2 to November 9, 1987 was unconstitutional and in violation of Texas Common Law is presented for consideration. Because there are a number of inconsistencies and several contradictions in the affidavits and deposition testimony of the Angelina County Sheriff and his subordinates, a review of the principles that govern the disposition of motions for summary judgment is required.

The standard for summary judgments is set out in rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The mere existence of a factual dispute does not by itself preclude the granting of summary judgment. "[T]he requirement is that there be no *genuine* issue of *material* fact."
*St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (emphasis in original).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court's inquiry in ruling on a motion for summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. At the same time, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

The procedural posture of this case and its complexity require a detailed presentation of the facts that are presented with particular attention to factual issues concerning which there are inconsistencies, contradictions or disputes.

### A. Facts

On the evening of Monday, November 2, 1987, the plaintiff was arrested for hunting without a license by Walter Kirby, a game warden. Plaintiff was taken by Kirby to the home of Hulen McClure, a justice of the peace. Plaintiff pled guilty. The offense being a class C misdemeanor,[1] he was assessed fines and fees totalling $80.50. After he had been sentenced, plaintiff was taken to the Angelina County Jail, according to McClure, "to make a

---

1. Tex. Parks & Wildlife Code Ann. § 42.025 (Vernon 1990). At all times relevant to this lawsuit, § 12.406 of the Parks and Wildlife Code provided that "[a]n individual adjudged guilty of a Class C Parks and Wildlife misdemeanor shall be punished by a fine of not less than $25 no more than $500."

bond or pay, or ... stay." Def.Ex. # 7, p. 12.

McClure stated that this procedure of taking persons fined in connection with misdemeanor offenses to the jail so that they might "make a bond or pay, or either ... stay" was "routine." In response to the question "[H]as that been the policy for the 18 years that you've been Justice of the Peace," McClure answered "Yes, it is. No complaint about it. That's what we always did." Def.Ex. # 7, p. 12. Angelina County Jailer G.E. Warner states in his sworn affidavit that his instructions to plaintiff that "he could 'lay out' the fine imposed by the Justice of the Peace by remaining in jail" were "in accordance with the policy and orders of the Justice of the Peace." Def.Ex. # 1. However, at his deposition, which occurred prior to submission of plaintiff's motion, Warner stated that plaintiff was not incarcerated pursuant to McClure's order. Pl.Ex. # 6, p. 36. Sheriff Mike Lawrence also stated at his deposition that a person who had failed to pay a fine imposed as sentence for committing a class C misdemeanor could not be jailed without first going before a judge. Pl.Ex. # 5, pp. 80–81. He further testified that plaintiff was not incarcerated pursuant to McClure's order. Pl.Ex. # 5, p. 92. However, Lawrence, like Warner, states in his subsequently prepared, sworn affidavit, submitted as an exhibit to the defendants' opposition to plaintiff's motion for summary judgment, that it was his understanding that "Judge McClure ordered John Doe jailed ... for failure to pay a fine imposed by conviction by a Justice of the Peace." Def.Ex. # 4.[2]

While plaintiff was being processed at the jail, it was discovered that an outstanding warrant for his arrest existed, because of his failure to pay $268.00 in fines assessed as a result of a prior conviction for driving while intoxicated.[3] This warrant was in certain respects irregular. Lawrence states in his affidavit:

Often, warrants for unpaid fines are not delivered on a form entitled 'Capias Pro Fine' but, rather, are delivered to the Sheriff's Office, by the Clerk of the Court, on a *Capias Warrant* Form with the indication of the offense as "unpaid fines" and the amount of the fine which remains outstanding. In these instances, notwithstanding the form used, the Sheriff's Office and jail personnel have recognized the document as a Capias Pro Fine at the instruction of the County Court Judge. This particular procedure was not initiated by myself but, instead, existed prior to my election as Sheriff and has been carried out at the direction of the County Court Judge. More specifically, when the Sheriff's Office receives a warrant which appears to be executed by lawful authority such as a Justice of the Peace, County Court Judge or District Court Judge, the employees of the Angelina County Sheriff's Office act in accordance with the Order of that Court and do not research whether the issuing Judge acted appropriately in ordering such warrant issued.

Def. Ex. # 4. Likewise, Warner states in his affidavit, "Generally, when the Sheriff's Office receives a *Capias* warrant from the Court in Angelina County for unpaid fines, that warrant is treated as a *Capias Pro Fine* warrant." Def.Ex. # 1.

In his affidavit, Lawrence states that, at the time of plaintiff's incarceration, records at the Angelina County Sheriff's Office revealed that this capias was issued by the county judge because plaintiff's probation had been revoked on his conviction for driving while intoxicated. Def.Ex. # 4. *See also* Def.Ex. # 1. This testimony conflicts with that of Judge Joe Martin, who testified that a capias for unpaid fines had been issued for plaintiff, but made no mention of having revoked his probation. Def.Ex. # 3, p. 6. Copies of the records on which Lawrence based his testimony were not attached to his affidavit nor to that of G. E. Warner. No document revoking or amend-

---

**2.** Neither party submitted a copy of McClure's order.

**3.** Unlike the offense of hunting without a license, incarceration is authorized for persons convicted of driving while intoxicated.

ing the terms of plaintiff's probation has been submitted.[4]

There is conflicting testimony concerning the exact point in time at which this capias was discovered. Although he testified at his deposition, "I don't even recall the [plaintiff]," Pl.Ex. # 6, p. 31, Warner states in his affidavit that the capias relating to plaintiff's $268.00 in unpaid fines was not discovered until after plaintiff had made telephone calls and failed to raise funds to pay the $80.50 fine. According to Warner's affidavit, plaintiff "advised me that he would not be able to find someone to bring him money at the jail that evening [to pay the $80.00 fine]. At that time ... I advised [plaintiff] that he could 'lay out' the fine imposed by the Justice of the Peace by remaining in jail and that, for each day he remained in jail, he would be credited $45 in accordance with state statute." Def.Ex. # 1. Warner states that it was in the process of booking plaintiff into the jail, after plaintiff had failed to raise the funds for the $80.50 fine, that the "Capias Pro Fine" mentioned above was discovered.

In contrast, plaintiff's affidavit states that, after the "capias pro fine" had been discovered, "[t]he jailer directed me to a telephone to attempt to raise money to pay both fines." Pl.Ex. # 1. Similarly, Sheriff Lawrence states in his affidavit that "[a] review of the records relating to John Doe's incarceration indicate [sic] that he was given [an] opportunity [to use the telephone to raise sufficient funds to pay his fines and avoid incarceration] prior to being placed in the inmate population in the Angelina County Jail." Def. Ex. # 4.[5]

Plaintiff failed to raise the funds necessary to pay these fines. "At the time of my arrest," he states in his affidavit, "I had no money, owned no house or other assetts [sic] and owed money on a car that was subsequently repossessed." Pl.Ex. # 1. "I informed the jailer that I was not able to raise the money to pay the fines at that time. The jailer said I would have to 'lay out' the fine for eight (8) days at Forty–Five Dollars ($45.00) per day." Pl.Ex. # 1.

Notwithstanding his deposition testimony that he did not recall plaintiff, Warner states that plaintiff "did not identify a financial inability to satisfy his fines or a desire to work to satisfy his fines ..." According to Warner, plaintiff "elected" to "lay out" the $80.50 fine. When the "capias pro fine" was discovered, plaintiff "indicated that he also would not be capable of paying the $268.00 fine that evening. Again, Doe was advised of the ability to remain in jail and receive credit against the unpaid fine at the rate of $45.00 per day.... At that time, Doe elected to remain in jail to 'lay out' both of his fines." Def.Ex. # 1.

Although the "Inmate Money Card" filled out for plaintiff reflects that he had no money, Pl.Ex. # 3,[6] and his jail record states that he was unemployed at the time of his arrest, Pl.Ex. # 4, jail officials made no effort to determine whether or not plaintiff was indigent. Def.Ex. # 1 and Def.Ex. # 4.

In their affidavits, Warner and Lawrence both state that plaintiff "was incarcerated based upon both the order of the Justice of the Peace and the outstanding warrant issued by the County Court Judge." Def.Ex. # 1. The latter of these two, the "Capias Pro Fine," states that plaintiff was to be brought "before the Honorable County Court of Angelina County, Texas at Court

---

**4.** Defendants objected to certain of plaintiff's exhibits to his motion for partial summary judgment because they did not meet the requirements of rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e) provides, in part, that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Notwithstanding their objection to plaintiff's exhibits, defendants failed to attach any documents at all to the affidavits of Warner and Lawrence, although the latter relied extensively on jail and sheriff's office records.

**5.** The records Lawrence reviewed were not attached to his affidavit.

**6.** Defendants contest the admissibility of plaintiff's exhibits # 3 and # 4. Under the analysis set out below for determining the legality of plaintiff's incarceration, his economic status is not a material issue.

House of said County, in the City of Lufkin, Texas, *instanter....*" Pl.Ex. #7 (emphasis added). Notwithstanding this direction on the capias to bring plaintiff before the County Court *instanter*, Warner states in his affidavit, that this "warrant ... order[ed] the arrest and detention of the [plaintiff] until such time as the fine was paid." Def.Ex. #1. Similarly, Sheriff Lawrence states in his affidavit that plaintiff "was held ... until such time as the daily credit had allowed for his time served was equal to the fines outstanding as ordered by the Justice of the Peace and County Court Judge." Def.Ex. #4.

According to both Lawrence and Warner, plaintiff was given an opportunity to raise funds to pay his fines and incarcerated pursuant to a "routinely" followed procedure for dealing with persons brought in pursuant to capiases for unpaid fines. Lawrence states in his affidavit that

> [w]hen an individual is brought to be booked in for the purpose of incarceration to discharge a fine, he is first provided an opportunity to raise sufficient funds to pay the fine owed in order to forego such incarceration.

Def.Ex. #4. When a party cannot raise funds to pay his fines, he is held "until such time as the daily credit had [sic] allowed for his time served was equal to the fines outstanding...." *Id.* According to Lawrence in his affidavit, this procedure, pursuant to which the Sheriff or his subordinates convert a fine into a jail sentence, is authorized by the statutes of the state of Texas.

> These detentions are pursuant to Article 43.09 of the Texas Code of Criminal Procedure and, it is the text of that section which sets forth the responsibility of the Sheriff's Office in determining the amount of time to be served by an individual based upon the amount of fine which is outstanding and indicated by the warrant.[7]

*Id.* Similarly, Lawrence testified in his deposition that, where a party assessed

fines for a class A or class B misdemeanor fails to pay his fine, he may be incarcerated for failure to pay and accorded $45.00 per day credit toward payment of the fines. He further testified that a party who had failed to pay such a fine was not entitled to be taken before a Court. Pl.Ex. #5, pp. 80-81.

Lawrence's account of this procedure accords with the deposition testimony of the county judge who issued the capias pro fine pursuant to which plaintiff was held. County Judge Joe Martin, III testified that it was the "normal practice ... for the county to arrest someone for unpaid fines and put them in jail without bringing him or her before a court." Deposition of Judge Joe Martin, III, Def.Ex. #3, p. 11. A person arrested in this manner is "held until he pays the fine, or lays it out." *Id.*, p. 9. According to Martin, this was "the way its been as long as I've worked for the county either as the judge or before that when I was assistant county attorney." *Id.*, p. 12. When asked of the discrepancy between the order on the capias to produce the defaulting party and the order's execution by the Sheriff's office, Judge Martin testified that he "believe[d] ... the order for the warrant is, for him to be arrested and held until he pays the fine, or lays it out." *Id.*, p. 9. "[T]here's a lot of wording on legal documents," he continued, "that doesn't mean the same as it obviously says on the face." *Id.*, p. 10. Judge Martin's testimony accords with the deposition testimony, Pl.Ex. #6, and affidavit, Def.Ex. #1, of jailer G.E. Warner, and the deposition testimony of Chief Jailer Bennie Scott, Pl.Ex. #8, p. 35.

Having been incarcerated, plaintiff was held until November 9, 1987. On that date, two fine forms were filled out reflecting the fact that plaintiff had laid out his two fines by being credited $45.00 for each day of his detention. Def. Exs. #2A and B.

Lawrence testified that, at some point during plaintiff's incarceration, the Angeli-

---

7. This sentence immediately precedes the sentence quoted above in which Lawrence states that unpaid fines capiases are "often" delivered on standard capias forms. For this reason, it is clear that the "routine" of converting fines into jail terms is followed even when the capias form directs the sheriff to deliver the incarcerated party to the judge *instanter*.

na County Sheriff's department was "notified of an outstanding warrant for [plaintiff's] arrest in Nacogdoches County." Def.Ex. # 4. Lawrence states that plaintiff was also held pursuant to this warrant.[8]

Finally, it was Sheriff Lawrence's testimony, and it is nowhere disputed, that he "did not personally participate in the booking, incarceration, or supervision of [plaintiff] during the one week period that he was held in the Angelina County Jail." Def. Ex. # 4. *See also* Def.Ex. # 5, pp. 127–28.

### ■ B. Plaintiff's Section 1983 Claim

There are two essential elements to any section 1983 action. First, the conduct complained of must have been committed by a person acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984). Plaintiff brings claims against Angelina County and the Sheriff of Angelina County in both his official and individual capacities. The § 1983 claim against the county and the claim against the sheriff in his official capacity require that the plaintiff demonstrate municipal causation, in conformity to the principles governing municipal liability set out in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and succeeding cases. His claim against Sheriff Lawrence in his individual capacity similarly involves demonstrating that Lawrence was responsible for his constitutional deprivation in accordance with case law governing the liability of supervisory officials for constitutional violations committed by their subordinates. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987). In order to merit a grant of summary judgment, plaintiff must demonstrate that there is "no genuine issue of material fact" as to each of these three requirements, that is, (1) state action, (2) constitutional deprivation, and (3) municipal or supervisory responsibility. Because there is no dispute that the conduct complained of took place under color of state law, the first question for determination relates to the plaintiff's alleged constitutional deprivation.

### C. Deprivation of a Right Secured by the Constitution and Laws

■ Plaintiff argues that he is entitled to summary judgment on his § 1983 claim based on the Due Process and Equal Protection clauses of the Fourteenth Amendment. The Supreme Court's decisions in *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and its progeny, in particular, *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) and *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), concern the constitutional issues that are raised when persons who have been convicted of criminal offenses and assessed monetary fines or restitution are incarcerated because of their failure to meet their financial obligations. The most basic principle elaborated in this line of cases was succinctly stated in the opinion of the Court of Appeals for the Fifth Circuit in *Barnett v. Hopper*, 548 F.2d 550 (5th Cir.1977), *vacated as moot*, 439 U.S. 1041, 99 S.Ct. 714, 58 L.Ed.2d 701 (1978). "[T]he *Tate* court stated that once the determination is made that imprisonment is unnecessary and a fine would suffice, imprisonment could not then be imposed for inability to pay that fine." 548 F.2d at 553. This point was reiterated recently in the case of *Garcia v. City of Abilene*, 890 F.2d 773, 775 (5th Cir.1989) ("In *Tate* the Supreme Court held that imprisoning an indigent solely because he is unable to pay his fines contravenes the equal protection clause by discriminating based upon economic status.").

One implication of these cases relates to the imposition of an "alternative sentence" in which a party is given the option of immediately paying a fine or being incarcerated. In *Tate v. Short*, the Supreme Court stated that "the same constitutional defect condemned in *Williams* also inheres

---

**8.** No copy of this warrant has been provided the court.

in jailing an indigent for failing to make immediate payment of any fine...." 401 U.S. at 398, 91 S.Ct. at 670 (quoting Justice White's concurrence in *Morris v. Schoonfield*, 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970)). The Fifth Circuit has on numerous occasions held that imprisonment of indigents pursuant to alternative sentences was constitutionally infirm. In *Frazier v. Jordan*, 457 F.2d 726 (5th Cir.1972), the court affirmed a district court's grant of a habeas corpus petition brought on behalf of indigent persons who had been jailed pursuant to alternative sentences of $17 fine or 13 days in jail. 457 F.2d at 727. "[T]he detention imposed according to the alternative sentence," the court stated, "was unlawful." 457 F.2d at 730. *See* also, *Burton v. Goodlett*, 480 F.2d 983, 985–6 (5th Cir.1973).

A second implication of these cases may be seen in *Bearden v. Georgia*. In *Bearden*, it was held "that before a defendant can be incarcerated for failure to comply with a restitution order there must be a *factual determination* that the defendant has not made a reasonable bona fide effort to pay, or, if he has made such effort, that an alternative punishment will not satisfy the penalogical [sic] interests of the government." *U.S. v. Ryan*, 874 F.2d 1052, 1054 (5th Cir.1989) (emphasis added). The court stated in *Bearden* that "if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." 461 U.S. at 668–69, 103 S.Ct. at 2070–71 (footnote omitted). For this reason, the court held "that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672, 103 S.Ct. at 2072.

The Supreme Court's reasoning in *Bearden* reveals the manner in which "[d]ue process and equal protection principles converge" in cases relating to the treatment of criminal defendants where those defendants are sentenced to monetary sanctions and fail to meet their financial obligations.

461 U.S. at 665, 103 S.Ct. at 2068. The Supreme Court's *Bearden* opinion assumes that the equal protection principles that ground the holdings in *Williams, Tate, Frazier,* and *Burton* require some form of a pre-deprivation procedure for determining the reasons a party has failed to pay a fine or restitution. For there to be "evidence and findings" that a party "was somehow responsible for the failure or that alternative forms of punishment were inadequate," *Id.*, there must be a procedure or proceeding in which such a determination may be made.

The Fifth Circuit's *Garcia* opinion is also premised upon the existence of such procedures. The *Garcia* court distinguished the facts of that case from those of *Tate* and *Bearden* on the ground that the latter two cases

> rest[ed] on the assumption that the indigent appear[ed] before the court to assert his inability to pay. Even assuming an individual who is fined is too poor to pay, if he does not appear and assert his indigency, the court cannot inquire into his reasons for not paying and offer alternatives.

890 F.2d at 776. Self-evidently, a party cannot fail to appear if no provision is made for such a proceeding under these circumstances. *Williams* and its progeny assume, then, that before a government entity incarcerates a person for failure to pay a fine, it must provide some form of proceeding at which a court can "inquire into [a party's] reasons for not paying and offer alternatives" to incarceration. *Id.*

The reasons for this requirement are straightforward. When a court determines that a fine is sufficient punishment for a party convicted of criminal conduct, the State declares that its penological interest is served by a penalty that does not compromise most or all of the values referred to as his liberty interest. *See Bearden*, 461 U.S. at 670, 103 S.Ct. at 2071 ("The decision to place the defendant on probation ... reflects a determination by the sentencing court that the State's penological interests do not require imprisonment."). For this reason, when a govern-

mental entity determines to incarcerate a person for failure to pay a fine, it implicates an interest that, at the very least, "includes many of the core values of unqualified liberty. . . ." *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1971). These values are as basic as any in our constitutional scheme. The termination of even a parolee's or probationer's "qualified" liberty has been deemed to constitute a "grievous loss." *Id.* The Supreme Court has recently reiterated that "[t]he Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985) (citing *Bearden*, 461 U.S. at 666 and n. 7, 103 S.Ct. at 2069 and n. 7). "[T]he final revocation of probation," for example, "must be preceded by a hearing. . . ." *Id.* at 611. In light of the case law that has developed in connection with parole and probation revocation, the nature of the individual interest affected by the determination to jail a party for failure to pay a fine or restitution clearly supports the requirement of sufficient legal process.

Other equally compelling reasons for requiring process exist. In the absence of some procedure for determining the reasons for a party's failure to pay a fine, it is difficult to conceive how a governmental entity will avoid discriminating against indigents on the basis of their respective economic statuses. Without such a procedure or proceeding, it is likely that a governmental entity will systematically fail to meet the requirements of *Williams, Tate, Frazier,* and *Burton.* There is the danger, in other words, that persons will be unlawfully deprived of their right to be free from bodily restraint as a matter of course. The Supreme Court observed in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) that "[t]he function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding is to minimize the risk of erroneous decisions." 442 U.S. at 13, 99 S.Ct. at 2106. *Greenholtz* counsels the initiation of some form of legal process in circumstances, like those in the instant case, in which erroneous decisions are otherwise bound to occur.

"Due process analysis requires first a finding of a property or liberty interest and then an assessment of what process must attend a particular deprivation." *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 (5th Cir.1989). Clearly, an important liberty interest is implicated when the state determines to incarcerate a person for failure to pay a fine. This fact, coupled with the likelihood of unconstitutional conduct in the absence of process, clearly requires the institution of some form of pre-incarceration legal process for determining the reasons for a party's failure to pay a fine. Absent such a procedure, a government entity that immediately converts a fine into a jail term when a party fails to pay that fine deprives the imprisoned party of liberty without due process of law. Government conduct of this sort is unlawful whatever the economic status of the incarcerated person.

### D.   *John Doe's Incarceration*

Returning to the facts surrounding plaintiff's incarceration by Angelina County authorities, plaintiff alleges that his incarceration for failing to pay the fine assessed against him for hunting without a license was unconstitutional. Justice of the Peace McClure allegedly sentenced plaintiff to pay his fine immediately or lay it out. It is undisputed that officials at the Angelina County Jail allowed plaintiff to make telephone calls to attempt to raise funds to pay the $80.50 fine assessed for this offense. It is also uncontroverted that plaintiff was not taken before a magistrate when he failed to raise the funds necessary to pay his fines, and that no determination was ever made concerning whether or not plaintiff's failure to pay this fine was the result of indigency. There is conflicting testimony, however, concerning whether jail officials incarcerated plaintiff on the authority of the order from McClure.

In their depositions, both Lawrence and Warner testified that plaintiff was not incarcerated on the basis of his failure to

pay the fine for hunting without a license. In their affidavits, however, they testified that Justice of the Peace McClure ordered them to incarcerate plaintiff. McClure testified that he ordered that plaintiff pay his fine or lay it out. Defendants submitted as an exhibit a jail record, dated November 9, 1987, that states that plaintiff was remanded to the sheriff's custody for failure to pay this fine and served time in jail to lay it out. Def.Ex. #2A. There is conflicting evidence, then, concerning whether county authorities automatically converted plaintiff's fine into a jail term. Furthermore, no copy of McClure's order has been submitted to the court. In view of the contradictions in the testimony before the court and the incompleteness of the record, summary judgment may not be granted on this issue.

■ With regard to the second fine, however, the evidence is more complete and the material facts are not in dispute. After plaintiff was delivered into the custody of officials at the Angelina County Jail, an outstanding warrant was discovered for his failure to pay a $268.00 fine which had been assessed when he was convicted of driving while intoxicated. This warrant ordered that plaintiff be taken "before the Honorable Court of Angelina County ... instanter." Pl.Ex. #7. It is undisputed that the capias was understood by the jailer, the sheriff, and the county judge to require that plaintiff immediately pay the $268.00 or lay the fine out. Def.Exs. #1; #3, pp. 9–10; and #4. Plaintiff testified that he could not pay the fine and was told he would have to lay it out. Pl.Ex. #1. Warner testified that plaintiff "indicated that he also would not be capable of paying the $268 fine that evening." Def.Ex. #1. It is undisputed, then, that if plaintiff had paid the fine, he would not have been incarcerated on the basis of this warrant. In other words, had plaintiff paid the fine at this point in the proceedings, the state's penological interest would not have required imposition of a term of imprisonment.

It is undisputed that plaintiff failed to pay the fine. It is also unquestioned that

when he failed to pay the fine, a determination was made to incarcerate him immediately for the period necessary to lay out the $268.00 fine. Pl.Ex. #1; Def.Ex. #1. It is likewise uncontroverted that plaintiff was never taken before a judge, that no factual determination was ever made concerning the reasons for his failure to pay it, and that no consideration was given to alternatives to incarceration. Pl.Ex. #1; Def.Exs. #1 and #4.

■ The only potential fact question relates to Warner's claim that Doe "elected" to lay out his fine. Warner's sworn statements that plaintiff "advised me that he would not be able to find someone to bring him money at the jail that evening" and that plaintiff failed to tell Warner that he was *indigent* contradict his earlier testimony at his deposition that he did not "even recall the guy." Pl.Ex. #6, p. 31. "[A] nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir.1984); *Meyers v. M/V Eugenio C.*, 876 F.2d 38, 39 (5th Cir.1989). Furthermore, if Warner's other testimony is to be credited, Doe "elected" to do what Angelina County authorities would have forced him to do in any case. Warner himself, in his deposition testimony and in his affidavit, stated that the practice was that persons who could not raise the funds to pay their fines were incarcerated. Plaintiff certainly cannot be deemed to have waived his right to process in this situation. There is no indication that he was ever informed of it. Def.Ex. #1. For these reasons, Warner's statement that plaintiff "elected" to lay out his fine does not raise an issue of fact.

The unchallenged facts in this case establish that officials of the Angelina County jail immediately converted plaintiff's $268.00 fine into a jail sentence when he failed to pay the fine. This conduct thereby denied plaintiff of his "liberty, ... without due process of law." Constitution of the United States, Amendment XIV.

In his affidavit, Sheriff Lawrence states that "[d]uring the course of [plaintiff's] incarceration, this department was notified of an outstanding warrant for the arrest of John Doe from Nacogdoches County. Accordingly, Doe was also held based upon the authority of that additional warrant." Def.Ex. #4. As was noted above, a certified copy of this warrant ought properly to have been appended to the affidavits of Lawrence and Warner, which make reference to it. In any case, while the receipt of information about this warrant subsequent to plaintiff's incarceration may be relevant in determining the extent of any liability for this unconstitutional conduct, it does not alter the fact that the actions of county officials in jailing plaintiff for failing to pay a fine were constitutionally infirm.

### E. Municipal Liability

Having determined that the plaintiff's incarceration was unconstitutional, the next issue to be decided concerns the municipal causation requirement elaborated in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and subsequent cases dealing with the issue of municipal liability for constitutional torts. Briefly, *Monell* states that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Languirand v. Hayden*, 717 F.2d 220, 223 (5th Cir.1983), *rehearing denied*, 721 F.2d 819, *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036). "Where [a government entity] is sought to be held liable on the basis of actions by low-level employees ..., these must be shown to have been carried out in obedience to overall municipal policy or custom." *Rodriguez v. Avita*, 871 F.2d 552, 554 (5th Cir.1989) *cert. denied*, — U.S. ——, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989) (citing *Languirand v. Hayden*, 717 F.2d 220).

It has been "recognized ... that official policy need not be formally announced in a statement or regulation." *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986). As the Supreme Court recently stated in *Jett v. Dallas Independent School Dist.*, —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989):

Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, see *Monell*, 436 U.S., at 661, n. 2, 98 S.Ct., at 2020, n. 2, or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. *See Pembaur [v. City of Cincinnati*, 475 U.S. 469, 485–487, 106 S.Ct. 1292, 1301–02, 89 L.Ed.2d 452 (1986)] (White, J, concurring).

109 S.Ct. at 2723 (emphasis in original).

The initial step in assessing municipal liability is for "the district court" to determine which officers "have 'final policymaking authority' under state law concerning the actions at issue." *Crowder v. Sinyard*, 884 F.2d 804, 830 (5th Cir.1989). Article 351.041 of the Texas Local Government Code provides:

(a) The sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court.

(b) The sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail.

As the Court of Appeals for the Fifth Circuit observed in *Brown v. Byer*, 870 F.2d 975 (5th Cir.1989), this provision is a recodification of former article 5116(a) and (b) of the Texas Revised Civil Statutes. 870 F.2d at 980. Along with article 5115, which was recodified as Local Government Code §§ 351.001–351.015, article 5116 created a governmental structure within which "the authority to supervise, direct, or control the actual daily operation of each county jail lay with the elected sheriff of the county, subject to a superintending role of the county commissioner's court...." *Bush v.*

*Viterna,* 795 F.2d 1203, 1204 (5th Cir.1986). Article 5116 was specifically held by the Court of Appeals for the Fifth Circuit to impose upon the county sheriff a duty to establish procedures for "ensur[ing] that only those persons [we]re incarcerated for whom [he], or the deputy to whom he delegates such responsibilities, ha[d] a good faith belief based upon objective circumstances that he possesse[d] valid legal authority to imprison." *Douthit v. Jones,* 641 F.2d 345, 346–47 (5th Cir.1981); *Brown v. Byer,* 870 F.2d 975, 980–81 (5th Cir. 1989). Clearly, the existence of a duty on the sheriff's part to establish these procedures implies that the sheriff is also endowed with the authority to establish them. In light of the extant statute and case law, the county sheriff is clearly the official "who ha[s] the power to make official policy on [the] particular issue" with which the instant case is concerned. *Jett,* 109 S.Ct. at 2723.

▬▬ While there are conflicting statements concerning whether it was the county's practice to jail persons who could not pay fines assessed for violation of class C misdemeanors, compare Def.Ex. #7, p. 12 and Pl.Ex. #6, p. 11, the deposition testimony and affidavits of Angelina County officials clearly state, and it is not disputed, that it was the practice of jail officials immediately to incarcerate persons arrested on the authority of capiases pro fine without a hearing, if they failed to raise the funds to pay those fines by means of telephone calls from the county jail. In conformity with the analysis set forth above, it is found that this practice of automatically converting fine-only sentences into terms of incarceration was unconstitutional.

▬▬ Furthermore, plaintiff's incarceration for failing to pay his fine was also in contravention of the statutory law of the State of Texas. Article 43.03 of the Texas Code of Criminal Procedure provides that "[i]f a defendant is sentenced to pay a fine or costs or both and he defaults in payment, the court may order him imprisoned in jail until discharged as provided by law. A certified copy of the judgment, sentence,

and order is sufficient to authorize such imprisonment." The warrant pursuant to which plaintiff was incarcerated patently does not meet these requirements. In his affidavit, jail official G.E. Warner states that warrants of the sort involved in plaintiff's incarceration were "generally" understood to require "that the individual be taken to custody because of a failure or refusal to pay court imposed fines." Def.Ex. #1. Similarly, Sheriff Lawrence states in his affidavit:

> Often, warrants for unpaid fines are not delivered on a form entitled *"Capias Pro Fine"* but, rather, are delivered on a *Capias Warrant* Form with the indication of the offense as "unpaid fines" and the amount of the fine which remains outstanding. In these instances, notwithstanding the form used, the Sheriff's Office and jail personnel have recognized the document as a Capias Pro Fine at the instruction of the County Court Judge.

County Judge Joe Martin III testified to the same effect in his deposition. Def.Ex. #3, pp. 9–14. The substance of their undisputed testimony is that plaintiff's incarceration was effected in accord with an established procedure that was in violation of the Texas statutory law governing incarceration for failure to pay fines.

The conduct of the county officials that resulted in plaintiff's unconstitutional incarceration was not a deviation from a sound procedure for administering Angelina County's jail. Rather, those officials acted in accordance with instructions which were seconded by Sheriff Lawrence, the county official who was charged by statute to "exercise supervision and control over the jail." The scope of the sheriff's grant of authority included the implementation of procedures for processing persons arrested and brought to jail on the basis of capiases like the one relating to plaintiff. The sheriff's acquiescence in unsound and legally insufficient procedures effectively created a county policy for which the county is liable.

*F. Individual Liability of Sheriff Lawrence on § 1983 Claim*

▬▬ Analysis of Sheriff Lawrence's potential liability for his subordinates' uncon-

stitutional incarceration of plaintiff raises two issues. First, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987) (citation omitted). "[A] supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304 (citation omitted). Second, as a result of his qualified immunity, Lawrence will not be liable if the objective circumstances surrounding his conduct that is alleged to have deprived plaintiff of constitutionally-guaranteed rights or to have caused that deprivation warranted a belief that that conduct "[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ The constitutional deprivation suffered by plaintiff was not the result of the failure in a particular instance of an otherwise legitimate system for administering a county jail. *See, Thompkins v. Belt,* 828 F.2d at 305. Rather, it occurred in compliance with what county authorities unanimously characterized as the jail's standard operating procedure. There is no factual dispute about the existence or character of the procedure by which plaintiff was incarcerated. The discussion above establishes that this procedure was both constitutionally infirm and in violation of the statutory law of the State of Texas. The testimony of Warner and Lawrence makes it clear that when Warner incarcerated the plaintiff, he acted in accordance with the procedures Lawrence deemed proper. Although Lawrence has testified that he adopted these procedures at the behest of the county judge, the statutory law of the State of Texas assigns supervisory responsibility for jail officials to the county sheriff. *See* Tex.Loc.Gov't Code Ann. § 351.041 (Vernon 1988). This provision establishes that, though other county officials may have directed Lawrence to adopt a particular procedure for dealing with prisoners who failed to pay fines, jail officials are charged by law to act in accordance with the sheriff's statement of their responsibilities. Lawrence promulgated the procedure that jail officials followed when they incarcerated plaintiff. Where subordinates act pursuant to a policy or procedure adopted by their supervisor and their compliance with the policy or procedure results in a constitutional violation, promulgation of the policy or procedure is sufficient personal participation in the constitutional violation to give rise to individual liability on the part of the supervisory official. *Wanger v. Bonner,* 621 F.2d 675, 680–81 (5th Cir. 1980). Absent protection by qualified immunity, then, Lawrence's affirmance of an unconstitutional procedure supports supervisory liability under § 1983 for plaintiff's constitutional deprivation.

■ In the response to plaintiff's motion for partial summary judgment, Sheriff Lawrence states that, as a law enforcement officer, he is entitled to qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citing *Harlow,* 457 U.S. at 818, 819, 102 S.Ct. at 2738, 2739). In the present case, the conduct at issue is not a particular act, but the affirmance of the procedure by authority of which plaintiff was incarcerated. Therefore, the determination to be made is whether Sheriff Lawrence's affirmance of a procedure of immediately converting the fines of persons brought into the Angelina County Jail into terms of incarceration when they failed to pay their fines was "reasonable" "in the light of the legal rules that were 'clearly established' at the time it was taken."

The due process approach elaborated above to the constitutional implications of

incarceration for failure to pay fines is, in one sense, new. Though the analysis is based on clearly established principles developed in decisions of the Supreme Court and the Court of Appeals for the Fifth Circuit, prior decisions relating to the constitutional implications of nonpayment of financial sanctions assessed against those convicted of violations of criminal law have involved indigent persons and have been grounded on the Equal Protection Clause. In light of this, the Court determines that it was not unreasonable for Sheriff Lawrence not to have been aware that the procedure he affirmed for processing persons who failed to pay their fines violated the Due Process Clause of the Fourteenth Amendment to the Constitution. For this reason, he is entitled to qualified immunity from liability on a claim based on the fact that the procedure he affirmed denied plaintiff his liberty without due process of law.

■ It is noted, however, that the constitutional infirmity of immediately jailing *indigent* persons for failing to pay fines has been unequivocally stated by the Supreme Court of the United States, see *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the Court of Appeals for the Fifth Circuit, see *Frazier v. Jordan*, 457 F.2d 726 (5th Cir.1972) and *Burton v. Goodlett*, 480 F.2d 983 (5th Cir. 1973), and the Court of Criminal Appeals of Texas, see *Ex Parte Minjares*, 582 S.W.2d 105 (1978). There is a dispute between the parties concerning whether the plaintiff was indigent at the time he was incarcerated for failing to pay his fine. If evidence adduced at trial reveals that the plaintiff was in fact indigent, then the plaintiff's incarceration violated the Equal Protection Clause of the Fourteenth Amendment. It was found in preceding sections of this opinion that plaintiff's incarceration was in accordance with a procedure affirmed by Sheriff Lawrence and that this procedure was likely to result in unconstitutional incarceration of indigents. "In light of the legal rules that were 'clearly estab-

lished' at the time" Lawrence adopted this policy, it seems very unlikely that he could reasonably have concluded that his affirmance of this policy would not run afoul of the equal protection principles unequivocally enunciated in the cases cited above. *Crowder v. Sinyard*, 884 F.2d at 823. Hence, he must defend at trial plaintiff's claim against him based on the equal protection clause.

## G.   Unlawful Imprisonment

■ Plaintiff also advances a common law claim for wrongful imprisonment against the county and against Sheriff Lawrence individually. "Under Texas law, the elements of false imprisonment are: '(1) willful detention; (2) without consent; and (3) without authority of law.'" *Gladden v. Roach*, 864 F.2d 1196, 1201 (5th Cir.), *cert. denied*, ── U.S. ──, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989) (quoting *H.E. Butt Grocery Co. v. Saldivar*, 752 S.W.2d 701, 702 (Tex.App.—Corpus Christi 1988, no writ)). The Texas Tort Claims Act, however, "does not apply to a claim ... (2) arising out of ... false imprisonment...." Tex.Civ.Prac. & Rem.Code § 101.057 (Vernon 1986). Claims of false imprisonment are not among the actions allowed against a municipality. *Cronen v. Nix*, 611 S.W.2d 651, 653 (Tex.Civ.App.—Houston (1st Dist.) 1980, writ ref'd n.r.e.), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 112 (1981).[9] For this reason, plaintiff's claim against the county and against the sheriff in his official capacity must be dismissed.

■ With regard to the claim against Sheriff Lawrence individually, it is necessary to note, first, that he does not "have a general good-faith defense to the state tort of false imprisonment." *Gladden*, 864 F.2d at 1201 (citing *Douthit v. Jones*, 619 F.2d 527, 537 (5th Cir.1980)). In the recent case of *Brown v. Byer*, 870 F.2d 975 (5th Cir.1989), the Fifth Circuit noted that a sheriff may not be held vicariously liable for the wrongful acts of his deputies.

---

**9.** While *Cronen v. Nix* was decided under the predecessor statute to § 101.057, the recodification of the specific provision at issue does not appear to alter the substantive law. See, Texas Tort Claims Act, ch. 292, § 14(10), 1969 Tex. Gen.Laws.

870 F.2d at 980 (citing *Workman v. Freeman*, 155 Tex. 474, 289 S.W.2d 910 (1956)). A sheriff may be held liable, however, for failing to investigate whether "there exists lawful authority to incarcerate [a] prisoner." 870 F.2d at 981. This formulation of the sheriff's duty raises two fact issues. Although Lawrence's own affidavit appears to establish that he made no effort to investigate plaintiff's detention, a question exists relating to the exact point in time during plaintiff's incarceration that Lawrence's failure to investigate would turn into liability for wrongful imprisonment. This question implicates a second issue. Defendants claim that they became aware of an outstanding warrant for plaintiff's arrest issued by Nacogdoches County officials at some point during his detention. The existence of this warrant raises an issue concerning whether Angelina County authorities became aware of the warrant at a time before Lawrence's failure to investigate would have given rise to liability for wrongful imprisonment. If plaintiff's unlawful detention became lawful before Sheriff Lawrence was deemed to have breached his duty to investigate the authority for plaintiff's detention, it would appear that he is not liable for unlawful imprisonment. *See, Browning v. Pay–Less Self Service Shoes, Inc.*, 373 S.W.2d 71, 74 (Tex. Civ.App.—Austin 1963, no writ).[10]

### ORDER

In accordance with the memorandum opinion entered simultaneously herewith, it is

ORDERED that plaintiff's motion for partial summary judgment shall be, and it is hereby, GRANTED with respect to plaintiff's § 1983 claim for unlawful imprisonment in violation of the Fourteenth Amendment to the Constitution against defendant, Angelina County. It is further

ORDERED that plaintiff's motion for partial summary judgment shall be, and it

is hereby, DENIED with respect to plaintiff's § 1983 claim for unlawful imprisonment in violation of the Fourteenth Amendment to the Constitution against defendant, Sheriff Mike Lawrence, in his personal capacity. It is further

ORDERED that plaintiff's motion for partial summary judgment on his claim for common law false imprisonment against defendant, Angelina County, shall be, and it is hereby, DENIED. It is further

ORDERED that plaintiff's claim for common law false imprisonment against defendant, Angelina County, shall be, and it is hereby, DISMISSED. It is further

ORDERED that plaintiff's motion for partial summary judgment for common law false imprisonment against defendant, Sheriff Mike Lawrence, shall be and it is hereby, DENIED.

---

10. Although a copy of this warrant ought properly to have been attached to the affidavits of Warner and Lawrence, this court is loathe to grant a motion for summary judgment because of a technical mistake (although it is admittedly a relatively egregious one) by defendants' counsel. Plaintiff's motion is for *partial* summary judgment. This case will go to trial whether or not plaintiff is granted summary judgment on this issue. Should it become clear that the warrant did not arrive until late in plaintiff's incarceration, a directed verdict in plaintiff's favor could conceivably be ordered.