Tammy BROWN, Plaintiff–Appellee,

v.

Pamela Joy BYER, (Officer)—Euless, et al., Defendants,

Bob Bracken, Jesse E. Carter, and Don Byrd, Defendants–Appellants.

No. 87–1323.

United States Court of Appeals, Fifth Circuit.

April 24, 1989.

Henry J. Voegtle, III, Asst. Dist. Atty., Peter L. Harlan, Dallas, Tex., for defendants-appellants.

Don Gladden, Fort Worth, Tex., for plaintiff-appellee.

Before WILLIAMS, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Tammy Jean Brown sued several defendants under 42 U.S.C. § 1983 and pendent state law theories in order to recover damages for false arrest, false imprisonment, and two strip searches. Two defendants, Pam Byer and the City of Euless, settled. A jury found defendant Bob Bracken liable under both § 1983 and state law, and found defendants Constable Jess Carter and Dallas Sheriff Don Byrd vicariously liable. The jury found the remaining defendants, David Lytle, Fred Schreyer, and Dallas County, not liable.

Bracken, Carter, and Byrd appeal. Bracken contends that the Constitution does not protect persons against arrests executed pursuant to altered warrants if the alterations were the result of a reasonable mistake about the identity of the person named in the original warrant. Carter and Byrd contend that there is no basis in state or federal law for imposing vicarious liability upon them. All three contend that they are entitled to qualified immunity, and contest the district court's exercise of jurisdiction over the pendent state law claims. We affirm the district court's judgment with respect to Bracken's liability under both § 1983 and state law, but reverse the judgment as to Carter and Byrd on the ground that there is no evidence sufficient to justify a finding of vicarious liability.

I

During February 1984, someone passed six bad checks bearing the name "Tamie Brown" at a 7–11 convenience store. The back of the checks included a driver's license number and some other information which had been taken by the store clerk. In June 1984 the store's owner swore out a complaint, and a justice of the peace issued six arrest warrants for the arrest of "Tamie Brown." The warrants included the driver's license number recorded on the checks.

The warrants were delivered to Jess Carter, Constable of Precinct 6 of Dallas County. Carter assigned the warrants to Deputy Constable Bob Bracken. After some investigation, Bracken decided to write upon the warrants the name of Tammy Brown, the plaintiff in this case, and to change other information, including the driver's license number and the address of the suspect, to match information applicable to Tammy Brown. Bracken also added information describing the appearance and birthdate of Tammy Brown. Because Tammy Brown lived in Tarrant County, Brack-

en had the warrants entered into the North Texas Regional Computer System.

On November 2, 1984, Euless Police Officer Pamela Jo Byer stopped Tammy Brown, the plaintiff, for a traffic offense. Officer Byer ran a warrant check on Brown, and the computer search called up the altered warrants entered by Bracken. She was taken to the Euless Jail and strip-searched. The next day Officers David Lytle and Fred Schreyer showed up to take Brown to the Dallas County Jail, where she was strip-searched again. Brown alleged that Lytle and Schreyer used excessive force when taking her into custody. Largely as the result of efforts by her mother, Brown was released thirty-two hours after being taken into custody.

The primary factual dispute at trial was about Bracken's reasons for altering the warrant. Bracken said that he had sent a letter to the address of "Tamie Brown" shown on the bad checks, and that the post office had returned the letter stamped with a forwarding address. Bracken went to the address, which was the site of an apartment complex. He contended that he had discovered plaintiff Tammy Jean Brown had lived at the complex for a month. Bracken then altered the warrant accordingly, so as to show information relevant to Tammy Jean Brown.

Bracken said he had no independent recollection of sending the letter to the address shown on the check or of receiving the forwarding address, but contended that these steps were standard procedures. Bracken said that he had thrown away the envelope with the forwarding address on it.

Brown contended that because she had never had any connection with the address shown in the bad checks, Bracken's story was not true. She attempted to persuade the jury that Bracken had obtained her name by searching the records of an electric company for names similar to those on the warrants. Her theory was that Bracken had altered the warrants despite having no information whatsoever tying "Tammy Jean Brown" to the "Tamie Brown" on the warrants.

The City of Euless and Byer settled out before the case went to trial. A jury found that Bracken's conduct was unreasonable, was shocking to the conscience, was done with reckless disregard of Brown's constitutional rights, and resulted in the deprivation of her Fourth and Fourteenth Amendment rights. The jury found that Bracken knew or should have known that this conduct would result in the unlawful arrest of Tammy Jean Brown. The jury found no excessive force on the part of Lytle or Schreyer. The jury further found that Byer, the City of Euless, Lytle, and Schreyer acted as the agents of Byrd and Dallas County, but not as the agents of Carter or Bracken. Finally, the jury determined that Brown had suffered $25,000 in actual damages from the violations of her rights which it had identified, and imposed $55,000 in punitive damages against Bracken for his "wanton violation" of Brown's constitutional rights.

The defendants sought judgment notwithstanding the verdict, arguing, among other things, that Brown's arrest was constitutionally sound as a matter of law because executed pursuant to a "facially valid warrant." In a memorandum opinion, the district court made Carter, Byrd, and Bracken jointly and severally liable for the $25,000 in actual damages, which the district court held justifiable on state law grounds even if Brown's constitutional theory were infirm. The court footed the liability of Byrd and Carter on Tex.Rev.Civ. Stat.Ann. arts. 6870 & 6879b (Vernon) (subsequently recodified as Tex. Loc. Gov't. Code Ann. §§ 85.003(d) & 86.011(c) (Vernon)), dealing with the vicarious liability of sheriffs and constables. The district court also, however, rejected the defendants' constitutional argument, and imposed the $55,000 in punitive damages against Bracken.

## II

It was uncontested that Bracken altered the warrants. Bracken's explanation of why he did so depended for its persuasiveness on Bracken's own credibility. He had almost no independent corroborating evidence, and had no independent recollection

of crucial events. The jury was free to disbelieve him. They might instead have accepted Brown's theory, which was that Bracken had no reasonable basis for connecting Tammy Jean Brown to the "Tamie Brown" identified by the warrant. The jury apparently did disbelieve Bracken, since they found that his alterations to the warrant were unreasonable, shocking to the conscience, and in callous disregard of Brown's constitutional rights. We are without authority to disturb the jury's resolution of these credibility issues, and so will assume Brown's theory of the facts in the analysis that follows.

### III

All defendants in this case concede that a warrantless arrest of Tammy Jean Brown would have been a plain violation of Brown's Fourth and Fourteenth Amendment. The central constitutional question is whether the six warrants for the arrest of Tamie Brown excuse the defendants from § 1983 liability for the events leading to the arrest of Tammy Jean Brown.

Bracken contends that Brown was arrested pursuant to a facially valid warrant and as the result of mistaken identity. Bracken, citing *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), argues that such an arrest cannot provide the ground for a § 1983 damages action against the officer responsible for the arrest. This argument misconstrues *McCollan*.

*McCollan* itself is not a Fourth Amendment case: there is no challenge to the constitutionality of the plaintiff's arrest in *McCollan*. The absence of any such challenge is crucial to Justice Rehnquist's reasoning. The Justice emphasizes repeatedly that "respondent was arrested pursuant to a facially valid warrant, *and the Court of Appeals made no suggestion that respondent's arrest was constitutionally deficient*"; that "respondent makes clear that his § 1983 claim was based solely on Sheriff Baker's actions *after respondent was incarcerated*"; that McCollan's claim is easily disposed of "[a]bsent an attack on the validity of the warrant under which he

was arrested"; and that McCollan was deprived of liberty "pursuant to a warrant conforming, *for purposes of our decision*, to the requirements of the Fourth Amendment." 443 U.S. at 144, 99 S.Ct. at 2694 (emphasis added).

*McCollan* did not decide the constitutionality of McCollan's arrest; on the contrary, the Court's opinion *assumes* the constitutionality of the arrest. Only the incarceration, not the arrest, was put in issue. Brown's complaint is distinguishable in this crucial respect, for she claims, and the jury found, that her arrest was unreasonable within the meaning of the Fourth Amendment.

In addition to this legal distinction, there is also a crucial factual distinction between McCollan's complaint and Brown's complaint. McCollan apparently agreed that he was arrested as the result of an honest mistake about his identity: he conceded that the arresting officer reasonably thought McCollan to be the man specified in a valid arrest warrant. Indeed, the mistake of identity was easily understandable, since the information on the warrant had been taken from the driver's license of a sibling who had stolen McCollan's own license and was pretending to be McCollan.

Brown makes no comparable concession to Bracken's integrity. On her theory of the case, Bracken altered the warrant so as to subject her to arrest despite the absence of any evidence connecting Tammy Jean Brown to the Tamie Brown specified in the warrant. As we have said, the jury might reasonably have believed this theory of the facts. On that theory, Bracken's actions did not involve a case of mistaken identity. Instead, they constituted a classic Fourth Amendment violation: a decision to arrest an individual without a valid arrest warrant for that person and absent any circumstances that would justify such an arrest. Indeed, Bracken's alterations to the warrants support an inference that he, unlike the *McCollan* defendants, knew that the person he wanted to arrest was not the person described in the warrants. If Tammy Jean Brown were the person identified by the warrants as they

originally stood, Bracken need not have changed them.

These distinctions are enough to uphold the district court's disposition of the constitutional issues. Brown, unlike McCollan, did challenge the constitutionality of her arrest. The jury was justified in finding that Bracken knew Brown was not the woman described by the arrest warrants. The existence of a facially valid warrant for the arrest of one person does not authorize a police officer to effect the arrest of another person, even if the officer believes the second person guilty of the first person's crimes and even if the two people have similar names. The fact that officers may sometimes arrest the second person by an honest mistake does not constitute a legal excuse for the conduct of an officer who makes no such mistake.

Even were these distinctions not sufficient to decide the issue, Bracken places too much weight on the existence of a "facially valid warrant." The Supreme Court has held that a § 1983 claim may recover for Fourth Amendment damages on the basis of a *subfacial* challenge to a warrant. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Moreover, it is in fact questionable whether there was a "facially valid warrant" in this case, since Bracken had altered the face of what was once a valid warrant. It is at least arguable that by changing the description on the warrants, Bracken destroyed the only valid warrants that had existed. What remained after the alterations did, as required by Texas law, specify the name of a person, state the offense of which the person was accused, and bear the signature of a magistrate. Tex.Code Crim.Proc.Ann. art. 15.02 (Vernon). But the name of Tammy Jean Brown was inserted *after* the magistrate had signed the warrants, then bearing the name of Tamie Brown. No magistrate had signed warrants bearing the description that led to Tammy Jean Brown's arrest.

Nor can Bracken rely upon *Simons v. Clemons*, 725 F.2d 1053, 1055 (5th Cir 1985), or *Jureczki v. City of Seabrook, Tex.*, 760 F.2d 666, 668 (5th Cir.1985), two pre-*Malley* cases considering the Fourth Amendment legitimacy of arrests executed pursuant to facially valid warrants. *Simons* involved a facially valid warrant and an honest mistake. The latter element—the honest mistake—is absent from this case, and the former element—the facially valid warrant—may be missing as well. *Jureczki* held that if an arrestee is taken into custody pursuant to a facially valid warrant, and if probable cause for issuance of the warrant did in fact exist, then malice toward the arrestee on the part of the officer who sought the warrant will not suffice to vitiate the sufficiency of the warrant for Fourth Amendment purposes. The *Jureczki* court found that a magistrate's "determination of probable cause breaks the chain of causation and insulates the initiating party from liability." Bracken never submitted the altered warrants to a magistrate, and so failed to protect Tammy Brown from arrest and, likewise, failed to protect himself from liability. Moreover, on the jury's theory of facts, there would have been no probable cause for issuance of a warrant naming Tammy Jean Brown even had Bracken sought one. We therefore need not consider the effect of *Malley*, if any, upon either of these cases.

Bracken's theory of the warrant requirement wholly misses the point of that requirement. To obtain an arrest warrant, an officer must appeal to a magistrate for verification of the officer's judgment that probable cause exists to arrest a particular person. This check upon the officer's own assessment of probable cause is lost if the officer may alter the information in the warrant after the warrant issues. Likewise, when the arresting officer is not the person who originally sought the arrest warrant, the description given by the warrant helps the officer to determine whether a suspect is in fact the individual identified in the warrant. This safeguard, too, is lost when the warrant is defaced.

Because we hold that § 1983 liability was properly imposed upon Bracken under the Fourth and Fourteenth Amendment, we find it unnecessary to inquire whether, as Bracken maintains, *Parratt v.*

*Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), would bar Brown from prevailing upon a procedural due process theory in this case.

## IV

The district court held Byrd and Carter liable under Tex.Rev.Civ.Stat. arts. 6870 and 6879b. Both statutes impose vicarious liability upon sheriffs for the acts of their deputies. It is, however, the established rule in Texas that no such vicarious liability will lie unless the sheriff has in some way ratified the wrongful acts of his deputies. *Workman v. Freeman,* 155 Tex. 474, 289 S.W.2d 910 (1956). Byrd and Carter correctly contend that there was in this case neither a jury finding that they had ratified the tortious acts of others, nor any evidence that would support such a finding. We conclude that the district court erred by entering judgment against Byrd and Carter pursuant to the vicarious liability statutes.

It is true, as Brown urges, that in *Whirl v. Kern,* 407 F.2d 781, 794–95 (5th Cir. 1969), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969), we recognized that false imprisonment is under Texas law a strict liability tort. "As we understand the Texas law of false imprisonment, read in conjunction with the statutory duties of the sheriff as keeper of the county jail, non-negligence is no modifier of liability." 407 F.2d at 795. We held that Texas law adopts the principle that "non-malicious restraint is no sweeter than restraint evilly motivated, and we cannot sanction chains without legal justification even if they be forged by the hand of an angel." 407 F.2d at 794–95.

Brown contends that *Whirl* establishes an exception to the *Workman* rule for cases involving false imprisonment. *See, e.g., Williams v. Thomas,* 511 F.Supp. 535, 540 (N.D.Tex.1981) (*Whirl* effectively presumes that sheriff has ratified wrongful acts when tort is wrongful imprisonment); *see also Douthit v. Jones,* 619 F.2d 527, 537 (5th Cir.1980) (no good faith defense to a false imprisonment claim). We, however, view *Whirl* differently. Judge Goldberg's

opinion for the court in *Whirl* carefully distinguishes between the vicarious liability statutes which formed the basis for the district court's judgment against Byrd and Carter, and the statute which formed the basis for Sheriff Kern's duty and liability. 407 F.2d at 794. According to Tex.Rev.Civ. Stat.Ann. art. 5116(a) and (b) (Vernon 1987) (subsequently recodified as Tex.Loc.Gov. Code Ann. § 351.041 (Vernon)),

> Each sheriff is the keeper of the jail of his county. He shall safely keep therein all prisoners committed thereto by lawful authority, subject to the order of the proper court, and shall be responsible for the sake of keeping such prisoners. The sheriff may appoint a jailer to take charge of the jail, and supply the wants of those therein confined; but in all cases the sheriff shall exercise a supervision and control over the jail.

*See also McBeath v. Campbell,* 12 S.W.2d 118, 120 (Tex.Com.App.1929) (imposing liability pursuant to article 5116).

Yet although the rule of *Whirl* does not provide a rationale for holding Byrd or Carter vicariously liable for the tortious acts of Bracken, it may provide an alternative basis for making them directly liable for Brown's false imprisonment. *Whirl,* however, must be read in combination with its later elaboration in *Douthit v. Jones,* 641 F.2d 345, 346–47 (5th Cir.1981), *rehearing of* 619 F.2d 527 (5th Cir.1980). In the second *Douthit* opinion, we explained that, "Construing *Whirl* [and a later case] together, we conclude that art. 5116 imposes a duty upon county sheriffs in Texas to incarcerate only those persons whom he has lawful authority to imprison. A sheriff may satisfy this duty by adopting reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison." 641 F.2d at 346–47.

This language, and particularly its reference to the sheriff's "good faith belief," may at first seem difficult to reconcile with

our statements about Texas law in *Whirl.* In passages already quoted more fully above, we said that "non-negligence is no modifier of the sheriff's liability," and that "we cannot sanction chains without legal justification even if they be forged by the hand of an angel." 407 F.2d at 795. The key to interpreting these apparently incongruous statements lies in *Douthit*'s reference to "objective circumstances," and in *Whirl*'s reference to "legal justification." As *Whirl* made clear, in its explanation of the early Texas *McBeath* decision, the duty imposed by art. 5116 is a duty to investigate. 407 F.2d 795–96. *Douthit* clarifies this duty by indicating that the investigation must yield "objective circumstances" justifying a good faith belief that there exists lawful authority to incarcerate the prisoner. It is not enough that the sheriff investigates, and has a "good faith" belief at the end of the investigation. Nor is it enough that the sheriff can find some excuse for his failure to investigate. In these senses, as *Whirl* put it, non-negligence is no modifier of the sheriff's liability, and the law will not sanction unjustified chains forged by the hand of an angel.

For purposes of this case, one question suffices to determine the relevance of art. 5116. Did Brown plead and prove that either Byrd or Carter failed to implement the procedures required by *Douthit?* Brown did not attempt to make out a case under art. 5116. There was no evidence to show an inadequate investigation by either Byrd or Carter. The interrogatories submitted to the jury, like the district court's eventual memorandum supporting judgment, mention Byrd and Carter only in connection with their duties as supervisors of their agents. Brown had no objection to the interrogatories. We have found no mention of Tex.Rev.Civ.Stat.Ann. art. 5116 in the briefs or in the record.

Carter, of course, also appears to have a defense to liability under art. 5116 because he is not a sheriff. We find it unnecessary to discuss this point in light of our conclusion that neither Byrd nor Carter can be held liable under art. 5116.

Because neither the vicarious liability statutes invoked by the district court nor the direct liability theory propounded in *Whirl* can justify the imposition of damages against Carter and Byrd, we vacate the trial court's award as to those two defendants, and hold them not liable.

V

■ All three appellants contend that federal and state law immunity doctrines insulate them against the claims pursued by Brown. As we have already reversed the judgment against Carter and Byrd, we consider this argument only as it applies to Bracken. We find that neither immunity doctrine will permit him to overcome the jury's verdict against him.

Bracken first contends that the qualified immunity doctrine set out in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982), protects him against liability for the consequence of Brown's unconstitutional arrest. We have previously recognized, however, that these doctrines offer no comfort to an officer if a jury concludes, on the basis of sufficient evidence, that "no reasonable officer could have believed that" the conduct complained of was lawful. *Melear v. Spears,* 862 F.2d 1177, 1184 (5th Cir.1989); *see also id.* at 1187–88 (Higginbotham, J., concurring specially). The jury in this case found that Bracken acted in reckless disregard of Brown's constitutional rights, and, as we have already observed, the evidence provides a sufficient basis for this view of the facts.

Bracken's state law immunity argument founders upon the identical reef. As Bracken correctly contends, Texas law extends to state officials a qualified immunity which protects them when they carry out quasi-judicial duties in good faith. *Wyse v. Dept. of Public Safety,* 733 S.W.2d 224 (Tex.App.—Waco 1986, writ ref'd n.r.e.). This doctrine does not help Bracken, however, for the jury found he was not acting in good faith. *See also Gladden v. Roach,* 864 F.2d 1196, 1201 (5th Cir.1989) (no good

# 982

faith immunity under Texas law in false imprisonment cases).

## VI

The defendants contend that the district court had no jurisdiction over the state law claims because Brown had no substantial federal claim. In light of our disposition of Bracken's constitutional arguments, we need not address this point at any length. Brown not only had, but prevailed upon, a substantial federal claim.

## VII

Defendant Bracken also challenges the jury's award of punitive damages on the ground that there was insufficient evidence for such an award. Punitive damages are available in section 1983 actions when the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Here, the jury found, in response to special interrogatory no. 8, that Bracken indeed acted in "callous or reckless disregard or indifference to Plaintiff's constitutional rights."

The facts adduced in the record support that conclusion. Recklessness can be reasonably inferred from the evidence showing that the *only* connection between the hot-check writer and Brown was Bracken's letter intended for the hot-check writer to the address of plaintiff Brown. Bracken's subsequent investigation only turned up evidence negating the connection: no matching prior addresses, no matching driver's license numbers, a different spelling of the given name, and the use of the middle-name "Jean." Hence, we uphold the jury's award of punitive damages.

## VIII

For the reasons stated, we affirm in all respects the district court's judgment with respect to Bracken. We reverse the district court's judgment against Byrd and Carter.

AFFIRMED IN PART AND RE-VERSED IN PART.