## 1626

The STATE, Respondent v. Larry THOMPSON, Appellant.

(403 S.E. (2d) 139)

Court of Appeals

*Assistant Appellate Defender Robert M. Dudek,* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* and *Sol. James C. Anders,* Columbia, *for respondent.*

Heard Jan. 17, 1991; Decided March 11, 1991.

Rehearing Denied April 11, 1991.

SHAW, Judge:

Appellant Larry Thompson was convicted by a jury of distribution of cocaine and sentenced to eighteen years imprisonment. We affirm.

On October 21, 1988, Barry Brown, Jr., an undercover narcotics agent, bought cocaine from a man identified as "Hippy." Agent Brown immediately met with the "street team" and gave them a detailed description of Hippy. The street team located an individual who met the description. On November 3, 1988, an arrest warrant was issued on the affidavit of Officer Stone, Brown's supervisor. The name, Larry Thompson, and the description were added after the arrest was made on November 5, 1988. On November 16, Brown was shown ten photographs and he picked Thompson as one of the people from whom he bought drugs.

The issues we are asked to consider are whether the court erred in admitting hearsay testimony on the identification of Thompson, in admitting identification evidence obtained as a result of an illegal arrest warrant and in failing to take corrective action when it ruled a *Batson* violation had been committed.

The State called Barry Brown, Jr., and he testified about his purchase of cocaine from Thompson and the subsequent meeting with the street team. On October 21, 1988, Brown went to an area known for dealing drugs and blended with the crowd. It was 11:00 p.m., but Brown was able to see and describe Thompson because a fire provided some light to the area. He described Thompson as a twenty-seven or twenty-eight year old black man, five feet seven inches tall, wearing a dark jacket, dark jeans, tennis shoes, a scarf, gray skull cap and who had a cane and walked with a limp. Within five minutes, he forwarded this to the street team. Following the gathering of information by the street team, "Hippy" was identified as Larry Thompson. On November 3, 1988, an arrest warrant was issued bearing the name "Hippy." This is the name given to Brown at the time of the purchase of cocaine and Brown was informed he could make further pur-

chases by asking for "Hippy." Following appellant's arrest, Brown identified Thompson through photographs as one who had sold drugs to him.

## I

On appeal, Thompson contends the trial judge erred in allowing hearsay identification testimony. The record reveals, however, the trial judge sustained defense counsel's objections to the testimony of which appellant complains. No motion to strike, no request for instruction that the jury disregard the testimony, nor a motion for a new trial based on the admission of the testimony was made at trial. Appellant has failed to preserve this issue. He obtained the only relief he sought and this court, therefore, has no issue to decide. *State v. Sinclair,* 275 S.C. 608, 274 S.E. (2d) 411 (1981).

## II

Appellant further contends the trial judge erred in allowing the State to present evidence of pretrial identification arguing it was obtained as a result of an illegal arrest warrant in that the warrant failed to sufficiently identify the person to be arrested. Generally, a valid arrest warrant must contain the name of the person to be arrested. 5 Am. Jur. (2d) *Arrest* § 9 (1962). In the instant case, however, no warrant was needed for the arrest. Brown provided specific information to establish probable cause which was entirely adequate to allow the street team to arrest Thompson. Besides, a police officer has the authority to arrest a person without a warrant for a felony based on probable cause. *State v. Retford,* 276 S.C. 657, 281 S.E. (2d) 471 (1981).

## III

During the selection of the jury, the State used three (3) of its peremptory challenges to remove a white female, a white male and a black female. During the selection of an alternate, the State used a peremptory challenge to remove a black male. Following the jury selection, defense counsel challenged the State's excusing two black veniremen. The court required the solicitor to give his reason for striking them. He stated the black female was struck because her husband had been convicted of driving under the influence. The

court found this was a legitimate and racially neutral reason for the challenge. The solicitor then stated he struck the black male as an alternate because he appeared to be approximately the same age as Thompson. Defense counsel then informed the court that the alternate juror struck was actually older than Thompson which was reflected on the juror's information sheet.

Then the following exchange occurred:

> MR. ROGERS: Your Honor, may I ask what my options are again?
>
> THE COURT: No, sir. I'm just asking you what you'd like. The options are we have twelve jurors. There is one member of a cognizable racial group, the same as the defendant, who has been stricken. There is at this point a justified neutral reason presented to the court. The solicitor represents that that person was stricken because her spouse had a D.U.I. conviction. The solicitor represented that no other member seated on the jury had a spouse who had a D.U.I. conviction. That's his information at this point which I have to accept as a valid reason. So, we come down to an alternate which an alternate is surplusage under all circumstances it seems to me. So, I cannot seat the gentleman who was stricken, Mr. Trapp, since the state has indicated to him that they don't want him.
>
> MR. ROGERS: Yes, Your Honor.
>
> THE COURT: The reason that the solicitor gave me in the solicitor's opinion satisfies the case that he's cited, but since he had information on his desk that he was not the age of this defendant I'm saying that the reason is not legally sufficient to strike the alternate. So, we can proceed with the jury that we have without an alternate or we can go through the whole procedure just to get another alternate.
>
> MR. ROGERS: Oh, just to get another alternate. I would proceed without an alternate, Your Honor.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986), the court held that the equal protection clause guarantees the defendant that the state will not exclude members of his race from the jury service on account of

race. In *State v. Jones*, 293 S.C. 54, 358 S.E. (2d) 701 (1987), our Supreme Court stated as follows:

> Rather than deciding on a case by case basis whether the defendant is entitled to a hearing based upon a *prima facie* showing of purposeful discrimination under the vague guidelines set forth by the United States Supreme Court, the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of defendant's race from the venire.

> \* \* \* \* \* \*

> In order to raise and preserve a *Batson* issue, the defendant must move for a hearing after the jury is selected but before it is sworn. This hearing is to be held out of the presence of the jury panel and the jury venire. If the trial judge finds that the defendant has established a *prima facie* case of purposeful discrimination and the solicitor has failed to give a racially neutral reason for the contested peremptory strikes, the process of selecting the jury shall start *de novo*.

Having found the reason for the strike of the alternate to be insufficient, the trial judge suggested, and defense counsel agreed, they would proceed to trial without an alternate rather than begin a *de novo* selection of the jury. Clearly, under S.C. Code Ann. § 14-7-320 (Supp. 1990), the calling of alternate jurors is within the discretion of the trial judge. As noted by the trial judge, any possible *Batson* violation as relates to the alternate could not have tainted the jury panel because he was simply called as a possible alternate. *See State v. Green*, — S.C. —, 392 S.E. (2d) 157 (1990) (any error in the qualification of a venireman would be harmless beyond a reasonable doubt in light of the fact that he was an alternate and it never became necessary to use the alternates in this case).

For the foregoing reasons, appellant's conviction is AFFIRMED.

SANDERS, C.J., and LITTLEJOHN, Acting Judge, concur.