**Jimmie A. JOYE, Plaintiff,**

v.

**RICHLAND COUNTY/RICHLAND COUNTY SHERIFF'S DEPARTMENT, Defendants.**

No. 3:97–2219–19.

United States District Court,
D. South Carolina,
Columbia Division.

April 22, 1999.

---

**21.** 949 F.2d at 784.

**22.** 75 F.3d 40 (1st Cir.), *cert. denied,* 519 U.S. 845, 117 S.Ct. 130, 136 L.Ed.2d 79 (1996).

**23.** 75 F.3d at 45.

Douglas N. Truslow and Cameron B. Littlejohn, Jr., Columbia, SC, for plaintiff.

William H. Davidson, II, Columbia, SC, for defendants.

### ORDER

SHEDD, District Judge.

This civil rights action (42 U.S.C. § 1983 and supplemental state-law claims) arises from an incident in which plaintiff was mistakenly arrested pursuant to a bench warrant that was issued for his son. On defendants' motion, United States Magistrate Judge Joseph R. McCrorey has entered a Report and Recommendation ("the Report") in which he recommends that the Court enter summary judgment in defendants' favor as to all claims except plaintiff's Fourth Amendment claim against defendants Clemens and Davis, who are the officers who executed the arrest warrant. As to this latter claim, Magistrate Judge McCrorey determined that a factual issue exists so as to preclude summary judgment in favor of Clemens and Davis either on the merits or on the basis of qualified immunity. Neither plaintiff nor defendants have objected to the Report.

The Court has reviewed the Report and finds that Magistrate Judge McCrorey correctly concluded that defendants are entitled to summary judgment on those claims for which he recommended that summary judgment should be granted. Therefore, the Court will accept the Report as to all claims except the Fourth Amendment claim against Clemens and Davis. However, for the reasons set forth below, the Court finds that Magistrate Judge McCrorey incorrectly concluded that Clemens and Davis are not entitled to summary judgment on plaintiff's Fourth Amendment claim. Accordingly, the Court will also enter summary judgment against plaintiff on that claim as well.

### I

Pertinent to the Fourth Amendment claim against Clemens and Davis, the record reflects that an arrest warrant was lawfully issued for an individual identified on the warrant as "Joye, Jimmie A." The warrant designated this individual's address as being "515 Hiller Rd., Chapin," and it identified him as being five feet eleven inches tall, with a weight of 155 pounds, and a birth year of 1968. In attempting to execute this warrant, Clemens and Davis went to 515 Hiller Road, where they were told that Jimmie A. Joye had moved next door to 517 Hiller Road. Clemens and Davis were further told that Jimmie A. Joye must be home because all of his vehicles were there. Clemens and

Davis then went to 517 Hiller Road and arrested plaintiff. Plaintiff acknowledged that he was Jimmie A. Joye, but protested his arrest.[1] At some point during this incident, Clemens crossed out the second "5" in the street address and changed it to a "7" to make the address read "517 Hiller Rd."

Hindsight now reveals that the subject of the warrant was actually plaintiff's son, Jimmie A. Joye, Jr., and that plaintiff was mistakenly arrested. While there were certain facts which indicated that plaintiff was not the subject of the warrant—*e.g.*, plaintiff stands five feet eight inches tall and was born in 1939 [2]—there is nothing in the record to indicate that at the time of the arrest either Clemens or Davis were, or should have been, specifically aware of the fact that plaintiff's son is Jimmie A. Joye, Jr., or that the subject of the warrant was plaintiff's son, rather than plaintiff. Moreover, there is nothing in the record to suggest that Clemens or Davis executed the warrant with an improper motive.

The mistaken arrest provides the basis for plaintiff's Fourth Amendment claim against Clemens and Davis. Magistrate Judge McCrorey concluded that this claim should proceed to trial because "there is a question of fact, sufficient to survive defendants' motion for summary judgment, as to whether [Clemens and Davis] had a reasonable, good faith belief that they were arresting the correct person." [3] Elaborating on this conclusion, Magistrate Judge McCrorey stated:

1. Plaintiff contends that Clemens and Davis refused to inform him of the basis for his arrest or provide him with a copy of the warrant. If this is true, Clemens and Davis may have violated S.C.Code Ann. § 17-13-50. However, a violation of state law does not provide the basis for a § 1983 claim. *Clark v. Link,* 855 F.2d 156, 161-62 (4th Cir.1988).

2. The warrant also listed the driver's license number of the "Jimmie A. Joye" who was being sought, and that number differs from plaintiff's driver's license number.

3. *Report,* at 7.

Although the warrant listed Jimmy Joye as the person sought, Joye was approximately thirty years older than the birthdate listed on the warrant, he was approximately three inches shorter than the height listed on the warrant, and his driver's license differed from that listed on the warrant. Further, viewing the facts in the light most favorable to the plaintiff, the deputies failed to present him with a copy of the bench warrant, which only supports his theories. A simple check of the bench warrant should have revealed that Joye was not the person wanted in the bench warrant.[4]

Magistrate Judge McCrorey also used this line of reasoning to deny Clemens' and Davis' assertion of qualified immunity, stating that they "fail to show that there [sic] actions were objectively reasonable where they failed to compare the information on the bench warrant with Joye and failed to give Joye a copy of the warrant." [5]

## II

Section 1983 "allows recovery for plaintiffs who are denied their federal civil rights by someone acting 'under color of state law.' If there is no deprivation of federal rights, the inquiry ends. If a violation has occurred, a suit may still be barred by the state official's qualified immunity." [6] Law enforcement officers are "entitled to summary judgment on the ground of qualified immunity if they can establish that reasonable officers could have believed that their actions were law-

4. *Id.* at 8–9 (footnote omitted). Magistrate Judge McCrorey cited *Brown v. Byer,* 870 F.2d 975 (5th Cir.1989), a case in which an officer was found liable under § 1983 for altering an arrest warrant, as support for his conclusion. *Report,* at 7–8. As will be explained *infra, Brown* is inapposite.

5. *Report,* at 17.

6. *Mensh v. Dyer,* 956 F.2d 36, 39 (4th Cir. 1991).

ful in light of both clearly established law and the information the officers possessed at the time. [The Court] inquire[s] into the 'objective legal reasonableness' of the actions; the officers' subjective beliefs are irrelevant." [7]

As noted, Magistrate Judge McCrorey considered the significant age discrepancy between plaintiff and the person identified on the warrant, the relatively slight height discrepancy between those individuals, and the driver's license discrepancy to be sufficient to call into question the reasonableness of the Clemens' and Davis' arrest of plaintiff.[8] At bottom, Magistrate Judge McCrorey's conclusion rests on his view that "[a] simple check of the bench warrant should have revealed that Joye was not the person wanted in the bench warrant." [9] While there is undeniable logic in Magistrate Judge McCrorey's implicit determination that law enforcement officers have a duty to ensure that they are arresting the correct person when executing an arrest warrant, the Constitution—through § 1983—neither compels absolute certain-

ty in the exercise of this duty nor provides a remedy for every violation of this duty.

Indeed, it is settled that "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under ... § 1983." [10] Moreover, "[i]n executing a warrant, officers are not required to investigate independently every claim of innocence," [11] or to accept claims of mistaken identity by the arrestee.[12] "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment...." [13]

### A.

Initially, the Court finds it appropriate to address the issue of the alteration of the warrant because that fact seems to have influenced Magistrate Judge McCrorey's recommendation.[14] As noted, Magistrate Judge McCrorey cited the Fifth Circuit

---

7. *Id.* at 39 (citations omitted).

8. The most obvious indicia of misidentification that could have alerted Clemens and Davis that plaintiff may not have been the correct person to arrest is the discrepancy in his age from the age listed on the warrant, for while it is unclear from the Report whether the officers were aware of plaintiff's precise age when they executed the arrest warrant, it is reasonable to assume that he did not appear to have been born in 1968. The relatively small height discrepancy and the driver's license discrepancy are much less obvious indicia, since judging one's height is an inexact endeavor, and there is no indication in the Report that plaintiff produced his driver's license during the arrest.

9. *Report,* at 8–9 (footnote omitted).

10. *Thompson v. Prince William County,* 753 F.2d 363, 364 (4th Cir.1985); *see also Mensh,* 956 F.2d at 39 ("An arrest based on probable cause does not violate the fourth amendment, even if the wrong person is arrested").

11. *Mensh,* 956 F.2d at 40.

12. *See Hill v. California,* 401 U.S. 797, 803, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) ("Upon

gaining entry to the apartment, they were confronted with one who fit the description of Hill received from various sources. That person claimed he was Miller, not Hill. But aliases and false identifications are not uncommon").

13. *Id.* at 804, 91 S.Ct. 1106.

14. It must be emphasized at the outset of this discussion that this case deals with alteration of an *arrest* warrant rather than a *search* warrant:

> An arrest warrant is issued ... upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast [sic] is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Steagald v. United States,* 451 U.S. 204, 213, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

*Brown* case, and stated that it "lends support to Joye's claim that an honest mistake was not made and that the officers did not have a reasonable, good faith belief that they were arresting the correct person." [15]

In *Brown*, the Fifth Circuit affirmed a § 1983 jury verdict against an officer who altered arrest warrants. The warrants originally bore the name of "Tamie Brown" and had her driver's license number on them. After the warrants were issued, an officer changed the name on the warrant to "Tammy Jean Brown," and also changed the driver's license number and the address to coincide with Tammy Jean Brown's license number and address. Ms. Brown was eventually wrongfully arrested pursuant to the altered warrants. At trial, there was factual dispute concerning the reason for the officer's conduct. The jury returned a verdict in favor of Ms. Brown.

On appeal, the officer argued that the verdict should have been set aside because Ms. Brown was arrested pursuant to facially valid warrants. The Fifth Circuit rejected this argument, recognizing that the case boiled down to a factual question concerning the officer's motives:

> On [Brown's] theory of the case, [the officer] altered the warrant so as to subject her to arrest despite the absence of any evidence connecting Tammy Jean Brown to the Tamie Brown specified in the warrant. As we have said, the jury might reasonably have believed this theory of the facts. On that theory, the [officer's] actions did not involve a case of mistaken identity. Instead, they constituted a classic Fourth Amendment violation: a decision to arrest an individual without a valid arrest warrant for that person and absent any circumstances that would justify such an arrest. In-

deed, [the officer's] alterations to the warrants support an inference that he ... knew that the person he wanted to arrest was not the person described in the warrants....

> The jury was justified in finding that [the officer] knew Brown was not the woman described by the arrest warrants. The existence of a facially valid warrant for the arrest of one person does not authorize a police officer to effect the arrest of another person, even if the officer believes the second person guilty of the first person's crimes and even if the two people have similar names. The fact that officers may sometimes arrest the second person by an honest mistake does not constitute a legal excuse for the conduct of an officer who makes no such mistake.[16]

*Brown* is clearly inapposite. Here, unlike *Brown*, the only alteration to the warrant was the change to reflect what Clemens thought was the proper address of the individual named on the warrant. Clemens made this change based on what he was told by the individuals at 515 Hiller Road, and it accurately reflected what he found to be true: Jimmie A. Joye was indeed living at 517 Hiller Road. The alteration had nothing to do with the mistake in identity between plaintiff and his son. Therefore, while the motives of the officer in *Brown* were clearly at issue—*i.e.*, whether he changed the *identity* of the subject of the warrants for improper reasons—Clemens' alteration of a non-identifying fact does not call into question his motives.[17]

■ In *Brown*, the Fifth Circuit also questioned in dicta whether the warrants

---

**15.** *Report*, at 8.

**16.** 870 F.2d at 978–79.

**17.** In fact, it does not appear from a constitutional standpoint that the address was even required to be on the warrant. *See Powe v. City of Chicago*, 664 F.2d 639, 645 (7th Cir. 1981) ("An arrest warrant that correctly

names the person to be arrested generally satisfies the fourth amendment's particularity requirement, and no other description of the arrestee need be included in the warrant"); *State v. Thompson*, 304 S.C. 85, 403 S.E.2d 139, 140 (App.1991) ("Generally, a valid arrest warrant must contain the name of the person to be arrested").

were valid after the officer altered them, noting that "[i]t is at least arguable that by changing the description on the warrants, [the officer] destroyed the only valid warrants that had existed." [18] The Court need not decide whether it is sound policy for an officer to alter an arrest warrant, or whether a certain amount or type of alteration renders an arrest warrant invalid (although it surely does), since the narrow circumstance present here—*i.e.*, alteration of the address on an arrest warrant—clearly appears not to invalidate a warrant.[19]

### B.

The Court now turns to the issue of whether there is any basis in this case under which Clemens and Davis can be held liable for arresting plaintiff. As noted, the mere fact that Clemens and Davis made a mistake is not enough to subject them to liability. The question then becomes what is the standard by which the Court can judge whether they acted with "sufficient probability." The following cases illustrate that law enforcement officers are afforded wide latitude under circumstances similar to those present in this case.[20]

In *Thompson*, an undercover drug investigation supplied information necessary for an arrest warrant of a person originally identified as "Lisa," who was later identified (incorrectly) during the investigation as "Lisa Ann Thompson." Officers who had not participated in the investigation executed the warrant and arrested Lisa Ann Thompson. At Ms. Thompson's initial court appearance, the undercover police officer saw her for the first time and realized that the wrong person had been arrested. The charges against Ms. Thompson were dropped, and she filed a § 1983 lawsuit. In affirming dismissal of Ms. Thompson's lawsuit, the Fourth Circuit held:

> While there are details which with hindsight might have alerted the undercover agent or the officer serving the warrant that Lisa Ann Thompson might not be the person sought, it simply demands too much to expect police officers, on the basis of slight discrepancies of height (5' 5'" as against 5' 7'") and weight or in color of eyes (blue versus brown) and hair (blond as opposed to brown), to abandon obtention or execution of a warrant on someone who, for other strong indications (identity of first name, confirmation of the first name by a police informant, close connection with vehicle registered in Lisa Ann Thompson's name), meets the warrant's description.[21]

*Johnson v. Miller*[22] presents a more striking case of misidentification. In *Johnson*, an individual named Anette Jenkins used the name and savings account of Sharon Johnson to defraud a bank. The bank caught Ms. Jenkins and subsequently had an arrest warrant issued for her. For

---

**18.** *Id.* at 979.

**19.** *See, e.g., Harasim v. Kuchar*, 702 F.Supp. 178, 181 (N.D.Ill.1988) (alteration of address does not invalidate the warrant). In *United States v. Lauter*, 57 F.3d 212 (2d Cir.1995), the Second Circuit rejected a claim that an arrest warrant was invalid because the arresting officers learned prior to the arrest that the person to be arrested had changed his address from that reflected on the warrant. The Second Circuit noted that "all an arrest warrant must do is identify the person sought," and that the "address was immaterial to the determination of whether probable cause existed for [the] arrest." *Id.* at 215. The Second Circuit further noted that "a change in address subsequent to the issuance of an arrest warrant is typically not significant because it does not alter the suspect's identity." *Id.*

**20.** In fairness to Magistrate Judge McCrorey, it should be noted that while defendants based their motion on the legal principles discussed herein, they inexplicably failed to cite many of the pertinent cases. Defendants' apparent failure to recognize these authorities may explain why they did not object to the Report.

**21.** 753 F.2d at 365.

**22.** 680 F.2d 39 (7th Cir.1982).

some reason, the bank had the warrant issued in Ms. Johnson's name, and it gave Ms. Johnson's address to the police. The warrant's description of the individual identified as "Sharon Johnson" was actually a description of Ms. Jenkins. Ms. Jenkins was a five foot seven inch black female, and Miss Johnson was a five foot five inch white female. Despite the obvious discrepancy between the person identified in the warrant (Ms. Jenkins) and Ms. Johnson, an officer (Miller) executed the warrant and arrested Ms. Johnson. At her preliminary hearing, Ms. Johnson pointed out the mistake in her arrest, and the judge dismissed the warrant. A second warrant was issued, again mistakenly identifying Ms. Johnson, and another officer (Sutcliff)—who had knowledge of the previous arrest—arrested her. At a second preliminary hearing, the judge again dismissed the warrant. Ms. Johnson then brought a § 1983 suit against the officers, which the district court dismissed for failure to state claim upon which relief may be granted. The Seventh Circuit affirmed.

Concerning Ms. Thompson's claim against Officer Miller, the Seventh Circuit noted that because of the "discrepancy between the description in the warrant and the appearance of the person named in the warrant and arrested by the officer executing it, [it] ha[d] to decide whether such a discrepancy shows, at least prima facie, that the arresting officer violated the arrested person's constitutional rights." [23] The Seventh Circuit decided:

> Section 1983 is a tort statute. It punishes wrongful conduct. There is no allegation that Miller intentionally or even negligently, or otherwise wrongfully, deprived Miss Johnson of her liberty or property, and we will not infer wrongfulness from a mere discrepancy in the description. Those responsible for the discrepancy may be liable, but they are not defendants in this case. We do not think the arresting officer, Miller, can be

said to have acted wrongfully merely because the warrant he executed contained a description that did not match the appearance of Miss Johnson. For Miller the main thing was that the name was right. The purpose of the description was to help him, as the arresting officer, identify her and he needed no help since she acknowledged that she was the person named in the warrant. If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions. [24]

Recognizing that Ms. Thompson's claim against Officer Sutcliff presented a more difficult situation, the Seventh Circuit nonetheless concluded that he also was not liable under § 1983:

> The execution of a warrant by an officer who if he were more careful might have noticed that the warrant had been issued by mistake is not the stuff out of which a proper federal case is made. The Fourth Amendment and section 1983 have higher objects in view than getting arresting officers to backstop the mistakes of their superiors. This lawsuit under section 1983 duplicates, as the plaintiff's counsel acknowledged at the oral argument of this appeal, state tort remedies for false arrest, false imprisonment, invasion of privacy, defamation, and negligence. The conduct alleged in the complaint is outrageous, but it is also fully actionable under state law. It is not actionable under section 1983 . . . .
>
> This is not to say that police officers can run amok, without fearing liability under

**23.** *Id.* at 41.

**24.** *Id.* (citation omitted).

section 1983, so long as they have a piece of paper in their hands called an arrest warrant. If the complaint in this case had alleged that Miller or Sutcliff had procured a warrant that he knew to be based on mistaken identity, in an effort to deprive Miss Johnson of her liberty or property, it might be a very different case.... But that is not the allegation. The allegation is that the officers—Sutcliff perhaps carelessly— failed to notice that the description in the warrant did not match the appearance of Miss Johnson. This is not enough to bring section 1983 into play.[25]

In light of these cases, the Court can only conclude, as a matter of law, that Clemens and Davis are not liable to plaintiff under § 1983 because his claim fails on the merits and, alternatively, because they are entitled to qualified immunity. Clemens and Davis were presented with a facially valid arrest warrant for "Jimmie A. Joye" of "515 Hiller Road." When they arrived at 515 Hiller Road, they were told that Jimmie A. Joye used to live there, but that he had moved next door to 517 Hiller Road. They were further told that Jimmie A. Joye was at home at that time. When they went to 517 Hiller Road, plaintiff identified himself as Jimmie A. Joye. Given these circumstances, particularly plaintiff's verification of his identity, the physical description on the warrant became much less important, if at all.[26] As *Thompson* teaches, an officer is not required "to abandon obtention or execution of a warrant on someone who, for other strong indications ... meets the warrant's description."[27]

### III

Based on the foregoing, the Court hereby **ORDERS** on this the 22nd day of April, 1999, at Columbia, South Carolina, that

defendants' motion for summary judgment be **GRANTED**.

**25.** *Id.* at 42.

**26.** *See Johnson,* at 41("The purpose of the description was to help him, as the arresting officer, identify her and he needed no help

since she acknowledged that she was the person named in the warrant").

